Mr. Chief Justice Johnson delivered the opinion of the Court. The first question presented by the record is, whether the promise of the plaintiff in error was founded on a sufficient eon-sideration. The Supreme Court of Illinois, (Carson vs. Clark, 1 Scam. 114,) when discussing this point-, said: “To constitute a valid contract, it must be made by parties competent to contract, and be founded on a sufficient consideration. If the consideration for the promise be past and executed, it can then be enforced only upon the ground that the consideration or promise was rendered at the request of the party promising. This request must be averred and proved, or the moral obligation, under which the party was placed, and the beneficial nature of the service must be of such a character that it will necessarily be implied; as a promise by a master to pay his servant for past services. Here the inference is strong that the service was rendered at his request. Or if a debt is due in conscience, a promise to pay it will be binding; as where a father promised to pay for the maintainance of a bastard child. So, too, a promise founded upon an antecedent legal obligation will be valid; as a promise to pay a debt barred by the statute of limitations. Here the legal obligation is voidable, but the moral duty remains unimpaired and constitutes a good consideration. Test the present case by the broad principle to be deduced from the examples cited, and where will be found any legal or moral obligation on the part of the defendant to constitute a sufficient consideration for his promise ? The plaintiff entered upon and improved the land of the government. The motive by which he was actuated in doing so was entirely selfish, and the act itself unauthorized by law. The defendant was at the.time a stranger to the transaction, he had no interest in the land, and was no more benefit-ted, nor, for aught that appears, more likely to be benefitted, by it, than any other person. A request, then, cannot be inferred in the absence of all motive, and the request must be made, or the circumstances from which it is to be implied must exist prior to, or be concurrent with, the act which constitutes the consideration. Whatever benefit might accrue to the plaintiff by reason of the improvements upon the land he acquired by purchase from the government, he did not receive from the defendant, by virtue of his promise, either title or possession. The land, with the improvements thereon, passed to Mm by the sale from the government. His promise, then, to pay for that for which he had already paid, and to which he had received a perfect title, was without any consideration. If there is a moral obligation on the part of any one to make compensation to the plaintiff for the value of his improvements, it is on the part of the government; and under this view of the case, it is contended that the defendant, as alienee of the land, incurred all the obligation and liability of the government, his alienor. But there is no principle upon which this position can be maintained. It is true there are some covenants which run with the land; but, between such and the promise here set up, there is not one point of analogy. A purchaser from the government has not entailed upon him other or greater incumbrances or liabilities than he would be subject to' in purchasing from an individual. This would have imposed upon him a legal obligation to make an adequate compensation; but surely his alienee would incur no such obligation. If, then, this legal liability would not be imposed by a transfer of the land, it follows, conclusively, that a moral duty, which is regarded, both in law and equity, as entirely personal, would not flow from it. If, however, it should be considered that the defendant was under the same obligation as his alienor, would it, when coupled with the subsequent promise, impose upon him a legal obligation? To determine this question, it is necessary to inquire whether there are any acts on the part of the government from which a request to enter upon and occupy the public land, is to be implied; or whether the act itself can be regarded as meritorious. As to the first branch of the inquiry, it is said that the pre-emption laws, which have been passed from time to time, amount to a license and invitation to enter upon and occupy the land of the government. There would be much force in this reasoning, if those acts granting a prior right of purchase to the occupant, were all the legislation relative to the public lands. But they are not. Whatever presumption they may afford in favor of a license by the government is met and rebutted by the fact that there is a general law of Congress, which has been in force since the year 1807, forbidding, under severe penalties, all intrusion upon the public lands. And I understand that, in pursuance of the instructions of the Commissioner of the General Land Office, this law has been enforced in numerous instances. These pre-emption laws, then, can be regarded in no other light than acts of grace, exempting such as at that time come within their provisions from penalties which they had previously incurred, but not as repealing or abrogating the general prohibition. If, then, there is no license to settle upon the public lands, but on the contrary it is forbidden, can that of doing so be considered meritorious or of that beneficial nature that would impose a moral duty on the government? It is not every benefit that may result to one from the act of another that will create this duty either in morality or conscience. The nature of the benefit, the manner in which it is conferred, or the motive which induced it, may be repugnant to the feelings or wishes of the person who is benefitted thereby. And no principle of law will sanction the idea that a moral obligation can be imposed upon another against his will. All the circumstances of the transaction must be of such a nature as presuppose a request, otherwise it will not be a good consideration for a promise. The case cited, where one man shot another with the intention of killing him, but so far from succeeding in his design, the wound cured him of the dropsy, with which he was at the time afflicted, is an illustration of the principle that a benefit may be conferred without creating a moral or legal obligation to pay for it.” We have been induced to quote thus extensively from the opinion referred to, from the fact that it presents a clear and, to our minds, a most conclusive answer to the argument of the plaintiff below in the case. The same Court, in the cases of Hutson vs. Overturf, (same volume, p. 170,) Roberts vs. Gorin, (same 396,) and Townsend vs. Briggs, (same 472,) recognized and confirmed the same doctrine laid down in Carson vs. Clark; and also ruled, in the case of Hutson vs. Overturf, that their statute relative to contracts for the sale of improvements on public land, approved February 15, 1831, had not changed the principle of the common law, and made valid that class of contracts/ respecting improvements upon public lands which, before its passage, were void for want of a sufficient consideration. That statute declared that all contracts and undertakings entered into in good faith for the sale or payment of improvements made on the land owned by the government of the United States, should be valid and binding. It was there held that the provisions of the statute applied only to contracts respecting the sale of improvements, which, at the time the contract was entered into, were on the land owned by the government, and that therefore the promise of Hutson to Over turf to pay for that of which he was already the owner, was void at common law, for want of consideration, and was not made obligatory by the statute. The Supreme Court of Indiana, in the case of Carr vs. Allison, (5 Blackf. 64,) held that an improvement upon the public lands, made before the passage of their act of 1834, was not a valid consideration for the-bond sued upon. The Court, in that case, said: “We consider that the improvement, which was a part of the land, was no valid consideration for the bond. The declaration shows that the land, with the improvement, belonged to the United States, and that the plaintiff had no lawful interest in either of them. The agreement, therefore, to pay, in consideration of the improvement, was nudum pactum. The statute of 1834, relative to the sale of improvements on public lands, does not affect this case, as that statute was not in force when the contract was made. . This decision only goes to the extent that improvements on the public lands, whilst the title remained in the government, constituted no valid consideration for a promise prior to the passage of their statute; but it is not intimated what would have been the effect of the statute upon contracts made subsequent to its passage, nor did the facts call for or warrant any expression as to the character of a contract to pay for improvements after the soil should have been entered and become private property. The doctrine of this case, however, so far as it goes, is strictly consonant with the cases in 1' Scam. The Supreme Court of Mississippi has gone the whole length, and laid it down broadly that an improvement on the public lands is not a sufficient consideration to support a promise, whether made before or after the purchase from the government. The ground taken by that Court is, that the settler is a trespasser, and that, as such, he can acquire no rights which the law will protect or enforce. (See 1 Howard 150, Merrill vs. Legrand.) This Court has ruled otherwise, in case the contract is made whilst the improvement is upon the public land. In the case of Hughes vs. Sloan, (3 Eng. 149,) this Court said: “This was an action of covenant upon two writings obligatory, executed on the 25th December, 1833, each for a road waggon, payable on the days specified by Sloan to Hughes. The plea filed avers that the covenants sued upon were executed for and in consideration of an improvement represented by the plaintiff to be on the public land of the United States, when, in truth and in fact, the said improvement was on the sixteenth section, land appropriated for the purposes of education. The first question presented is, whether this plea interposes a sufficient defence to defeat the plaintiff’s action. It does not in any manner show a want or failure of consideration, but, on the other hand, shows a good and sufficient consideration to uphold each of the covenants. Settlers upon public lands often make valuable improvements thereon, and which frequently become the subject of barter and sale. The occupant cannot transfer the right of soil which is in the government, but only the improvement upon the land with the right to occupy the improvement disconnected with any right to the soil, and subject to the permanent rights of the United States. In this case, whether the improvement was upon the lands of the United States or upon the lands appropriated for the purposes of schools, is wholly immaterial. The improvements, and not the land, constituted the object of the purchase, and the title to the fee was equally adverse to the occupant, whether in the United States or in the inhabitants of the township.” This doctrine is the necessary result of the various statutes of this State by which improvements upon the public lands have been recognized as property. It is declared by statute that they shall be assets in the hands of an administrator, that ejectment and forcible entry and detainer may be maintained to recover them, &c. These enactments relate solely to improvements upon the public lands, and, as a matter of course, cannot be so construed as to operate upon such improvements after the title to the soil has passed out of the General Government and vested in an individual. We are, therefore, clearly of opinion that the promise, in this case, having been made subsequent to the purchase of the land from the government to pay for improvements made before, is a mere nudum .pactum, and consequently void. The next point relates to the supposed award set out in the declaration as the foundation of the action. The proof falls very short of sustaining the allegations in this particular. The referees, according to the testimony, failed in a most essential point to comply with the requisitions of the submission. It was expressly agreed and stipulated between the parties, in making their submission, that -the statements of each should be heard by the persons appointed to arbitrate and settle the question of the value of the improvement. This, the testimony shows, was not done, but, on the contrary, that McFarland was not present at the time of the arbitration, and that he had not been notified of the time when it would take place. The whole proceeding, therefore, was irregular, and the legal effect of such conduct was to defeat the object for which they had met together. If an arbitrator make an award on his own view, without calling the parties before him; the Courts will set aside the award. (See 11 Law Lib., p. 39.) Arbitrators should, on no account, examine any of the parties, or their witnesses privately, or without notice to the opposite party, for where arbitrators have examined one party or their witnesses, the other party not being present and not being aware that such examination was about to take place, the Courts have set aside awards on that account although the arbitrator made oath that such examination did not influence his judgment. same vol., and page, and the cases there cited.) It is clear from the authorities that the paper relied upon, under the proof in the cause, was not binding upon McFarland as an award, and that, for that reason, also the verdict and judgment were wholly unauthorized. The judgment of the Circuit Court of Chicot county, herein rendered, is, therefore, for the errors aforesaid, reversed, and the cause remanded, with instructions to proceed therein according to law and not inconsistent with this opinion.